## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____

BERNARD J. LAVERTY, JR.,         )
                                          )

      Plaintiff,               )

                                         )     **Civil Action No.**

      v.                       )     **08-40126-FDS**

                                         )

DAVID G. MASSAD, DAVID MANDARA,  )
MARCELLO MALLEGNI, BRENDA L.    )
MALLEGNI, SUSAN ALDEN, DAVID     )
KOZIAK, MICHAEL NORRIS, JANE     )
NORRIS, HEIDI NORRIS, WILLIAM    )
DEPIETRI, COMMERCE BANK AND    )
TRUST COMPANY, LBM FINANCIAL   )
LLC, WOLFPEN FINANCIAL LLC, and  )
STONE SERVICES, INC.,            )
                                         )

      Defendants.             )
_____)

### MEMORANDUM AND ORDER ON
### MOTION TO DISMISS OF DEFENDANT DAVID MANDARA

**SAYLOR, J.**

      This is an action arising out of loans by banks and individuals to a commercial and

residential real estate developer.  Plaintiff, Bernard Laverty, Jr., received several loans to purchase

and develop property throughout Massachusetts.  Most of the allegations center around loans

issued by defendants LBM Financial LLC and Wolfpen Financial LLC.  Defendants David

Massad, Marcello Mallegni, Michael Norris, and William Depietri are controlling shareholders,

managers, and/or officers of LBM and/or Wolfpen.  Plaintiff contends that defendants charged

usurious interest rates; created, mailed, and faxed fraudulent loan documents; breached loan

contracts; and extorted money from him by threatening to foreclose on the loans.

Thirteen of the fourteen defendants have filed motions to dismiss.  Plaintiff has submitted

memoranda in opposition to the motions of five defendants.  This order addresses only defendant

Mandara's motion to dismiss, which was not opposed by plaintiff.  The other motions will be

addressed separately.  For the following reasons, defendant Mandara's motion to dismiss will be

granted in part and denied in part.

## I.  <u>Background</u>

 The plaintiff's material allegations are accepted as true for the purposes of defendant's

motion to dismiss.

### A.  <u>Project at 655 West Second Street</u>

In 2002, Marcello Mallegni, William Depietri, and a Mr. Fraine created a voting trust to

hold their shares of interest in the real estate located at 655 West Second Street in Boston.

Mallegni was the trustee and held all the shares.  In 2003, without telling Laverty about the trust,

Fraine and Mallegni inviting him to invest in the project as a new partner, saying that he wanted to

use Laverty's buy-in money to pay off a loan on the project from Wolfpen Financial LLC.

Mallegni said he would personally obtain a loan from defendant LBM Financial LLC, and

contribute that money toward paying off Wolfpen.  Laverty agreed, obtained a loan from General

Bank (using his personal residence as collateral) and invested the money in the partnership.

Laverty did not know at the time that Mallegni was a manager and major shareholder of both

Wolfpen and LBM, or that instead of using personal assets to secure his $1.2 million loan from

LBM, Mallegni put a lien on the 655 West Second Street property.

Sometime later, Mallegni sabotaged the project, via his control of the trust, such that

construction was significantly delayed.  He also drastically increased the interest rate on the

mortgage LBM held on the property to 32% and added $48,000 of accrued interest to the

principal of the loan.  The result of Mallegni's actions was that Laverty could not pay off his loan

to General Bank because the construction was not complete and ready for sale.  Mallegni and

Massad controlled LBM, and threatened to have LBM foreclose on the property.  Laverty knew

that if this happened, it would be sold at auction, and he might lose his entire investment, be

unable to pay off the loan, and lose his personal residence.  With that threat, Mallegni, Depietri,

and Massad forced Laverty to allow them to use the 655 West Second Street property as

collateral for other loans on other projects in which they (but not Laverty) had invested.

Laverty contends that he suffered $4 million in lost profits as a result of the delays and

sabotage caused by defendants.  In addition, LBM is holding Laverty liable for the $1.2 million

loan, presumably on the theory that as a partner, Laverty is responsible for the debts of the 655

West Second Street partnership.  Due to the high interest rate on the loan, LBM is currently

demanding more than $4.9 million from Laverty.

**B.**      **Project at 401 West First Street**

In 2003, Laverty showed Mallegni property at 401 West First Street in Boston, and

explained his plans to demolish existing structures and build a new development on the lot.

Mallegni liked the idea.  He agreed to have LBM loan Laverty the money to purchase the

property and demolish the existing buildings, and to take Laverty to his friends at Commerce

Bank to obtain a loan for construction of the new development.  In December 2003, Laverty

bought the property with a $3.25 million mortgage, at a 16% interest rate, from LBM.

Laverty hired a demolition contractor, but Mallegni prevented LBM from releasing the

money to pay the contractor.  Mallegni then also refused to help Laverty obtain a loan for

construction at the site.  With no work going on at the site, the project went into bankruptcy.

Massad and Mallegni then caused LBM to foreclose on the property and (in 2007) auctioned it to

an LLC purportedly controlled by defendant Mandara, but with a mailing address of a property

owned by Massad and Mallegni.

Laverty contends that he suffered more than $12 million in lost profits from the project.

In addition, defendants are suing Laverty on the unpaid portion of the mortgage loan, which, due

to the high interest rate, is more than $8 million.

### C.    The $2 Million Line of Credit

In March 2004, Laverty signed loan documents on a $2 million line of credit from LBM.

Laverty signed the documents in his individual capacity and as the manager, trustee, or president

of other construction project entities he was using as collateral for the loan.[1]  Over the next few

months, Laverty made two draw requests totaling approximately $600,000.  When he submitted a

third draw request, Mallegni and Norris told him there was only $200,000 remaining on the line of

credit.  When Laverty inquired as to how that was possible, they told him that draws had been

made to pay Kirsten Corporation and KBF Sales.  Laverty, the only person with the authority to

do so, had not requested or approved those payments.  Laverty requested copies of the

documentation for those draw requests, but his request was ignored.

Laverty contends that he has lost tens of millions of dollars on various projects because he

did not have the on-time financing he needed and expected from the line of credit.  He has already

paid $1.5 million to LBM, but LBM claims he owes an additional $1.1 million.

---

[1] Robert Bradley, who filed a companion case against many of the same defendants, also signed these loan documents in his individual capacity.

### D.     The West Roxbury Projects

In October 2003, Laverty obtained a $3.63 million loan from Framingham Cooperative Bank to fund construction at condominium development projects on Washington Street and Cheriton Road in West Roxbury.  Laverty contends that Framingham Bank was also controlled by Massad and Mallegni.  Despite doing no work on the processing of the loan, Norris forced Laverty to pay him $20,000 in fees on the loan.  Norris was a partner at LBM and threatened to have LBM foreclose on other loans unless Laverty paid the fees.

Laverty then obtained a second $500,000 line of credit from LBM for the West Roxbury projects.  At Massad's whim, LBM would periodically prevent Laverty from drawing money on the line of credit.  Laverty was thus prevented from finishing work on, and selling, some of the units.  The project was losing money quickly.  Massad and Mallegni told Laverty to let Framingham Bank foreclose on the loan, and then they (Massad and Mallegni) would buy the property at auction.  Laverty refused and filed for bankruptcy.  Massad and Mallegni threatened to ruin Laverty for defying them.

### E.     The Quincy Condominium

In August 2004, Michael Norris told Laverty to help his daughter, Heidi Norris, find a condominium to purchase in Quincy.  Laverty found a place Heidi liked, and spoke to the seller, who wanted $175,000.  Michael said that his daughter could only afford $165,000.  Michael, under threat of having LBM foreclose on several of Laverty's loans, forced Laverty to buy the condo for $175,000, and then sell it (45 minutes later) to Heidi for $165,000.  Michael served as the closing attorney for both transactions.

5

F.      **Hibel Realty LLC**

Over the years, various defendants had forced Laverty to use property in Hyannis he owned with a Mr. Bradley as collateral for various loans Laverty had with LBM.  In 2006, Laverty needed another line of credit to do some work on the Hyannis property, and because it was cross-collateralized, could not obtain a loan from anyone other than LBM.  Massad and Mallegni often forced LBM to delay releasing money pursuant to Laverty's draw requests.  This delayed payment to the architect and engineering contractors Laverty hired, and thus delayed permitting for the project. With work on the project delaying and interest accruing to LBM, Laverty lost more than $6 million in expected profits.

Defendants also filled out fraudulent HUD forms associated with this loan and mailed and faxed the fraudulent forms, along with usurious demand letters on the loans, to Laverty.

II.     **Procedural History**

Laverty, initially proceeding *pro se*, filed a complaint against the defendants on April 9, 2008.  The court dismissed the case, without prejudice, on May 8, 2008, for failure to pay the filing fee, even after a court-granted extension and order to either file the fee or file financial disclosures showing why the fee should be waived.

On June 27, 2008, Laverty (now represented by counsel) again filed a complaint against the defendants.  The case was assigned to the Eastern Division of the District of Massachusetts. Laverty voluntarily dismissed the case, by notice filed on the docket, because he wanted the case assigned to the Central Division.  On July 1, 2008, he filed the present action.

The 25-count complaint alleges violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute (Count 1), conspiracy to violate RICO (Count 2), breaches of

loan contracts (Counts 3, 4, 12, 13, and 14), intentional and tortious interference with contractual

relations (Count 5) and intentional and tortiuos interference with business relations (Count 6),

intentional misrepresentation (Count 7), "fraudulent accounting" (Count 8), unjust enrichment

(Count 9), extortion (Counts 10 and 11), violations of statutory consumer protection laws

(Counts 15 and 24), "failure of consideration" (Counts 19, 20, 21, 22, and 23), "wrongful accrual

of interest" (Count 16), "bait and switch" (Count 17), and mail and wire fraud (Count 18).  The

complaint also requests "recharacterization" (voiding) of the LBM promissory note related to 655

West Second Street (Count 25).

Mandara is named as a defendant in 12 of the 25 counts, including substantive violations

of RICO (Count 1), RICO conspiracy (Count 2), intentional and tortious interference with

contractual relations (Count 5), intentional and tortious interference with business relations

(Count 6), intentional misrepresentation (Count 7), "fraudulent accounting" (Count 8), unjust

enrichment (Count 9), violations of statutory consumer protection laws (Counts 15 and 24),

"wrongful accrual of interest" (Count 16), "bait and switch" (Count 17), and mail and wire fraud

(Count 18).

Mandara has moved to dismiss all claims against him for failure to state a claim upon

which relief can be granted.

**III.    Analysis**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations in a

complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Thomas v.

Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008);  *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st

Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007)). "A

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965.  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi*, 513 F.3d at 305 (*quoting Centro Medico del Turabo, Inc.*, *v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Fed. R. Civ. P. 9(b) requires that plaintiffs plead fraud counts with particularity.  The purpose of that requirement is (1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations.  *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003).  *See also McGinty v. Beranger Volkswagen*, *Inc.*, 633 F.2d 226, 228-229 (1st Cir. 1980).

Mandara points out that the complaint mentions him in only four of the 218 paragraphs:

> 12.  Defendant David Mandara is an individual who resides in Westborough, Massachusetts.

> 34.  At all relevant times, Defendant Mandara is [*sic*] an officer of Commerce Bank.

> 65.   In November of 2007, Defendant Mallegni and Massad auctioned 401 West First Street and sold it to an entity called 401 West First Street LLC which is controlled by Defendant David Mandara, Defendant Massad's son-in-law.  The LLC has an address of 171 Locke Drive, Marlborough, Massachusetts, which happens to be owned by Defendants Mallegni and Massad.

95.     Defendant Mandara is the husband of Defendant P. Massad[2] and has been used by Defendant D. Massad and Mallegni as a straw and front man in the past.  Whenever the Defendants have pushed a loan into default, and have decided it is time to take over the project, the Defendants use Defendant Mandara to purchase the project at auction.

## A.    Count 1:  RICO

Count 1 alleges a substantive RICO violation.  RICO makes illegal any "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." See *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1st Cir. 1991), citing 18 U.S.C. § 1962 and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  "Racketeering activity" is defined in 18 U.S.C. § 1961 to include a variety of federal crimes, including, among other things, threats, bribery, extortion, embezzlement, theft, wire fraud, and mail fraud.  A "pattern of racketeering activity" means the commission of at least two related acts of racketeering activity during a span of ten years.  *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 164 (D. Mass. 2003) citing *Schultz v. Rhode Island Hospital Trust National Bank, N.A.*, 94 F.3d 721, 731-732 (1st Cir. 1996).

Plaintiff alleges a RICO claim involving mail and wire fraud, bank fraud, and bankruptcy fraud. The requirement to plead fraud with particularity extends to pleading predicate acts of fraud under RICO.  *See New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).  For example, with respect to mail and wire fraud, the complaint must "state the time, place and content of the alleged mail and wire communications perpetrating that fraud."  *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991).

---

[2] [Court's footnote: P. Massad is not named as a defendant.]

Plaintiff here makes no allegations in his complaint that Mandara mailed, faxed, or called anyone or anything for any purpose.  Indeed, the complaint mentions only one specific instance—the purchase at auction of the 401 West First Street property—where Mandara is alleged to have been involved in the other defendants' alleged scheme to enrich themselves while financially ruining the plaintiff.  The pleadings do not indicate how Mandara's actions constitute bank fraud, bankruptcy fraud, or any other crime. Even if Mandara's purchase of 401 West First Street was fraudulent, "a single episode does not constitute a pattern" of racketeering activity. *Laker v. Freid*, 854 F. Supp. 923, 930 (D. Mass. 1994).  Without at least a second predicate act, Mandara cannot commit a substantive RICO violation.  *Id*.

Paragraph 95 of the complaint makes a general assertion that Massad and Mallegni frequently use Mandara as a "straw" or "front man" to purchase property where they—acting through LBM or Wolfpen—have "pushed a loan into default."  That is not sufficient to allege a RICO predicate act.  Among other things, in RICO cases, "[p]redicate acts must be plead[ed] with particularity."  *In re Lupron Mktg.*, 295 F. Supp. 2d at 164, citing *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).  A broad assertion that Mandara has, at other times and places unspecified, purchased property at auction that Massad and Mallegni have forced into disclosure is not sufficient to meet that standard.  Because there is no second act alleged, there is no pattern, and without a pattern of racketeering activity there can be no substantive RICO liability.  Count 1 will therefore be dismissed as to Mandara.

**B.    Count 2:  RICO Conspiracy**

Count 2 alleges that all defendants "did unlawfully agree and conspire together to perform the illegal acts set forth above in violation of 18 U.S.C. § 1962(d)."  Complaint, ¶ 137. To survive

a motion to dismiss, a RICO conspiracy count must allege (1) that an enterprise affecting interstate commerce existed, (2) that the defendant knowingly joined the conspiracy, and (3) that the defendant intended to further an endeavor which, if completed, would have satisfied the pattern requirement of RICO. *See Aetna Casualty Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1561 (1st Cir. 1994) and *United States v. Cianci*, 378 F.3d 71, 88 (1st Cir. 2004). The plaintiff does not need to allege that each conspirator agreed to commit (or actually committed) two or more predicate acts. *Salinas v. United States*, 522 U.S. 52, 64 (1997). No overt act is required. *Id*. Furthermore, a defendant may be part of a RICO conspiracy even if he has not committed a substantive RICO violation. *Cianci*, 378 F.3d at 92.

Plaintiff has pleaded sufficient facts to satisfy the first prong—that at least some of the defendants, including David Massad, were involved in an enterprise and a violation of RICO.[3] The complaint does not directly allege that Mandara knew of the conspiracy. However, factual allegations required for "each material element" of the offense may be "either direct or inferential" at the pleading stage. *Gagliardi*, 513 F.3d at 305. The facts alleged here—that Mandara is David Massad's son-in-law; that he "has been used as a straw and front man in the past" and that they "use" him to purchase projects at auction; and that he purchased the 401 West First Street property at auction after his father-in-law's bank foreclosed on it—are (barely) sufficient allegations from which knowledge and intent may be inferred. The motion to dismiss will therefore be denied as to Count 2.

---

[3] *Cf. Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000). In *Efron*, the court held that if the pleadings do not state a substantive RICO claim upon which relief can be granted, the RICO conspiracy claim must also be dismissed. However, the plaintiff had failed to plead a substantive RICO claim against *any* defendant. Here, however, plaintiff has adequately pleaded substantive RICO claims against defendants other than Mandara.

### C.      Count 5:  Intentional Interference with Contractual Relations

Count 5 asserts a claim for intentional interference with contractual relations.  The

elements of a claim of intentional interference with contractual relations are (1) the existence of a

contract with potential economic benefit; (2) the defendant's knowledge of the contract; (3) the

defendant's intentional interference with the contract for an improper purpose or by improper

means; and (4) damages to the plaintiff.  *See United Truck Leasing Corp. v. Geltman*, 406 Mass.

811, 812 (1990).

The complaint alleges that "[t]here was an express contract between the corporate

Defendant LBM and Laverty" (¶ 150); that "[t]he Defendants were aware of the express contract

between the corporate Defendant LBM and Laverty" (¶ 151); and that "[t]he Defendants [*sic*]

Mallegni interfered with the express contract between the corporate Defendant LBM and

Laverty . . ." (¶ 152).  Those allegations do not state a claim against Mandara for tortious

interference with contract.  Count 5 will therefore be dismissed as to Mandara.

### D.      Count 6:  Intentional Interference with Business Relations

Count 6 asserts a claim for intentional interference with business relations.  The elements

of a claim of intentional interference with business relations are (1) the existence of a business

relationship with potential economic benefit; (2) the defendant's intentional interference with the

business relationship for an improper purpose or by improper means; and (3) damages to the

plaintiff.  *See Blackstone v. Cashman*, 448 Mass. 255, 260 (2007).

Paragraph 155 of the complaint states as follows:

Defendant's [*sic*] bad faith failure and refusal to fund the loans and disburse funds
to various contractors caused delays in the projects and harmed or destroyed
working relationships between Plaintiff and certain contractors, causing some to

walk off the jobs adding substantially to the costs of the projects and as a result
Plaintiff was harmed.

There is no allegation, however, that Mandara failed or refused to fund loans or disburse funds to

contractors.  Accordingly, Count 6 fails to state a claim against Mandara, and will be dismissed.

### E.    Count 7:  Intentional Misrepresentation

Count 7 asserts a claim for intentional misrepresentation.  To succeed on a claim of

intentional misrepresentation, the plaintiff must allege and prove that the defendant made a false

representation of a material fact; that the defendant knew the representation was false when he

made it; and that the plaintiff reasonably relied upon the representation to his detriment.  *See*

*Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007).  *See also Twin Fires Inv., LLC v. Morgan*

*Stanley Dean Witter & Co.*, 445 Mass. 411, 423 (2005).  The complaint makes no allegations that

he ever met, spoke to, or had any communications with Mandara.  Indeed, the complaint does not

so much as hint at any statements that Mandara ever made to plaintiff.  Certainly if there was no

communication and no representations, there could not have been reliance on a misrepresentation

to the plaintiff's determent.  Count 7 will therefore be dismissed as to Mandara.

### F.    Count 8:  Fraudulent Accounting

Count 8 asserts a claim for "fraudulent accounting."  There is no independent cause of

action under Massachusetts or federal law called "fraudulent accounting." To the extent the claim

is simply one for "fraud," it must be pleaded with particularity.  *See In re Lupron Mktg.*, 295 F.

Supp. 2d at 181-82 ("[c]ommon-law fraud is no more exempt than is statutory fraud from Rule

9(b)'s requirement that the circumstances constituting fraud or mistake shall be stated with

particularity").  The complaint says nothing about Mandara doing any accounting of any kind,

fraudulent or otherwise.  Count 8 will therefore be dismissed as to Mandara.

### G.    Count 9:  Unjust Enrichment

Count 9 asserts a claim for unjust enrichment.  To establish unjust enrichment, the plaintiff

must prove: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and

the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by

law." *Id*. at 182.

The complaint alleges that Mandara was a "straw and front man" for Massad and Mallegni

when he purchased 401 West First Street at a foreclosure auction.  The claim against Mandara for

unjust enrichment is somewhat illogical; it suggests that Mandara personally benefitted by

purchasing the property.  But if Mandara was only acting as a straw, then it was the principals

(Massad and Mallegni) who were unjustly enriched, not Mandara.  Nonetheless, the Court cannot

conclude that there is no set of facts under which Mandara was not unjustly enriched while acting

as a straw.  Accordingly, the motion to dismiss will be denied as to Count 9.

### H.    Counts 15 and 24:  Chapter 93A

Counts 15 and 24 assert claims under Mass. Gen. Laws ch. 93A, § 11, which prohibits

unfair or deceptive practices in business-to-business transactions.  "[A] plaintiff must allege some

sort of transaction between the parties for liability to attach."  *L.B. Corp. v. Schweitzer-Mauduit*

*Int'l, Inc.*, 121 F. Supp. 2d 147, 152 (D. Mass. 2000) (citing *Reisman v. KPMG Peat Marwick*

*LLP*, 965 F. Supp. 165, 175, n.14 (D. Mass. 1997)).  *See also Milliken & Co. v. Duro Textiles*,

LLC, 451 Mass. 547, 563 (2008) (Mass. Gen. Laws ch. 93A, § 11 is applicable only if "there was

a commercial transaction between a person engaged in trade or commerce and another person

engaged in trade or commerce").

According to the complaint, plaintiff had business dealings with several other defendants (e.g., Massad, Mallegni, LBM, and Wolfpen), and those defendants transacted with Mandara when they sold 401 West First Street to Mandara at auction.  Plaintiff alleges no transaction of any kind between Mandara (or his LLC) and himself.  Counts 15 and 24 will therefore be dismissed as to Mandara.

### I.      Count 16:  "Wrongful Accrual of Interest"

Count 16 asserts a claim for "wrongful accrual of interest."  There is no cause of action under Massachusetts or federal law called "wrongful accrual of interest."  Count 16 will therefore be dismissed as to Mandara.

### J.      Count 17:  "Bait and Switch"

Count 17 asserts a claim for "bait and switch."  There is no cause of action under Massachusetts or federal law called "bait and switch." "  Count 17 will therefore be dismissed as to Mandara.

### K.      Count 18:  Mail and Wire Fraud

Count 18 purports to state a claim for mail and wire fraud.  There is no private right of action for mail or wire fraud.  *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 105 (D. Mass. 1999) (J. Young).  "[M]ail fraud can be the predicate of a civil RICO action, [but] the mail fraud allegations themselves do not state a separate cause of action."  *Id*.  Count 18 will therefore be dismissed as to Mandara.

## IV.   Conclusion

For the foregoing reasons, defendant Mandara's motion to dismiss is hereby GRANTED in part and DENIED in part.  Counts 1, 5, 6, 7, 8, 15, 16, 17, 18, and 24 are dismissed as to defendant Mandara.

**So Ordered.**

<table>
<tr><td></td><td>/s/ F. Dennis Saylor</td></tr>
<tr><td></td><td>F. Dennis Saylor IV</td></tr>
<tr><td>Dated: March 10, 2009</td><td>United States District Judge</td></tr>
</table>