## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————
)
**BERNARD J. LAVERTY, JR.,**                )
)
    **Plaintiff,**                          )
)                    **Civil Action No.**
    **v.**                                  )                    **08-40126-FDS**
)
**DAVID G. MASSAD, DAVID MANDARA,**          )
**MARCELLO MALLEGNI, BRENDA L.**             )
**MALLEGNI, SUSAN ALDEN, DAVID**             )
**KOZIAK, MICHAEL NORRIS, JANE**             )
**NORRIS, HEIDI NORRIS, WILLIAM**            )
**DEPIETRI, COMMERCE BANK AND**              )
**TRUST COMPANY, LBM FINANCIAL**             )
**LLC, WOLFPEN FINANCIAL LLC, and**          )
**STONE SERVICES, INC.,**                    )
)
    **Defendants.**                         )
———————————————————————)

### MEMORANDUM AND ORDER ON MOTION TO DISMISS
### BY DEFENDANTS LBM FINANCIAL LLC and MARCELLO MALLEGNI

**SAYLOR, J.**

This is an action arising out of loans by banks and individuals to a commercial and

residential real estate developer.  Plaintiff, Bernard Laverty, Jr., received several loans to purchase

and develop property throughout Massachusetts.  Most of the allegations center around loans

issued by defendants LBM Financial LLC and Wolfpen Financial LLC.  According to the

complaint, defendants David Massad, Marcello Mallegni, and William Depietri are controlling

shareholders, managers, and/or officers of LBM and/or Wolfpen, and Michael Norris is counsel

for, and a partner of, LBM.  Plaintiff contends that defendants charged usurious interest rates;

created, mailed, and faxed fraudulent loan documents; breached loan contracts; and extorted

money from him by threatening to foreclose on the loans.

Thirteen of the fourteen defendants have filed motions to dismiss.  Plaintiff has submitted

memoranda in opposition to the motions of five defendants.  This order addresses only the motion

to dismiss filed by defendants LBM and Marcello Mallegni, which is opposed by plaintiff.  The

other motions are addressed separately.  For the following reasons, the motion filed by LBM and

Mallegni will be granted in part and denied in part.

## I.     Background

The material allegations of the complaint are accepted as true for the purposes of

defendants' motion to dismiss.

### A.     Project at 655 West Second Street

In 2002, Marcello Mallegni, William Depietri, and Francis Fraine created a voting trust to

hold their shares of interest in the real estate located at 655 West Second Street in Boston.

Mallegni was the trustee and held all the shares.  In 2003, without telling Laverty about the trust,

Fraine and Mallegni invited him to invest in the project as a new partner, saying that he wanted to

use Laverty's buy-in money to pay off a loan on the project from Wolfpen Financial LLC.

Mallegni said that he would personally obtain a loan from defendant LBM Financial LLC and

contribute that money toward paying off Wolfpen.  Laverty agreed, obtained a loan from General

Bank (using his personal residence as collateral), and invested the money in the partnership.

Laverty did not know at the time that Mallegni was a manager and major shareholder of both

Wolfpen and LBM, or that instead of using personal assets to secure his $1.2 million loan from

LBM, Mallegni put a lien on the 655 West Second Street property.

Some time later, Mallegni sabotaged the project, using his control of the trust, such that

2

construction was significantly delayed.  He also drastically increased the interest rate on the mortgage LBM held on the property to 32% and added $48,000 of accrued interest to the principal of the loan.  The result of Mallegni's actions was that Laverty could not pay off his loan to General Bank because the construction was not complete and ready for sale.  Mallegni and Massad controlled LBM, and threatened to have LBM foreclose on the property.  Laverty knew that if this happened, it would be sold at auction, and he might lose his entire investment, be unable to pay off the loan, and lose his personal residence.  By means of that threat, Mallegni, Depietri, and Massad forced Laverty to allow them to use the 655 West Second Street property as collateral for other loans on other projects in which they (but not Laverty) had invested.

Laverty contends that he suffered $4 million in lost profits as a result of the actions of the defendants.  In addition, LBM is holding Laverty liable for the $1.2 million loan.  Due to the high interest rate on the loan, LBM is currently demanding more than $4.9 million from Laverty.

### B. <u>Project at 401 West First Street</u>

In 2003, Laverty showed Mallegni a piece of property at 401 West First Street in Boston and explained his plans to demolish existing structures and build a new development on the lot. Mallegni liked the idea.  He agreed to have LBM loan Laverty the money to purchase the property and demolish the existing buildings, and to take Laverty to his friends at Commerce Bank to obtain a loan for construction of the new development.  In December 2003, Laverty bought the property with a $3.25 million mortgage, at a 16% interest rate, from LBM.

Laverty hired a demolition contractor, but Mallegni prevented LBM from releasing the money to pay the contractor.  Mallegni then also refused to help Laverty obtain a loan for construction at the site.  With no work going on at the site, the project went into bankruptcy.

Massad and Mallegni then caused LBM to foreclose on the property and (in 2007) auctioned it to an LLC purportedly controlled by defendant Mandara, but with a mailing address of a property owned by Massad and Mallegni.

Laverty contends that he suffered more than $12 million in lost profits from the project. In addition, defendants are suing Laverty on the unpaid portion of the mortgage loan, which, due to the high interest rate, is more than $8 million.

C.     **The $2 Million Line of Credit**

In March 2004, Laverty signed loan documents on a $2 million line of credit from LBM. Laverty signed the documents in his individual capacity and as the manager, trustee, or president of other construction project entities that he was using as collateral for the loan.[1]  Over the next few months, Laverty made two draw requests totaling approximately $600,000.  When he submitted a third draw request, Mallegni and Norris told him there was only $200,000 remaining on the line of credit.  When Laverty inquired as to how that was possible, they told him that draws had been made to pay Kirsten Corporation and KBF Sales.  Laverty, the only person with the authority to do so, had not requested or approved those payments.  Laverty requested copies of the documentation for those draw requests, but his request was ignored.

Laverty contends that he has lost tens of millions of dollars on various projects because he did not have the on-time financing he needed and expected from the line of credit.  He has already paid $1.5 million to LBM, but LBM claims he owes an additional $1.1 million.

D.     **The West Roxbury Projects**

---

[1] Robert Bradley, who filed a companion case against many of the same defendants, also signed these loan documents in his individual capacity.

In October 2003, Laverty obtained a $3.63 million loan from Framingham Cooperative Bank to fund construction at condominium development projects on Washington Street and Cheriton Road in West Roxbury.  Laverty contends that Framingham Bank was also controlled by Massad and Mallegni.  Despite doing no work on the processing of the loan, Norris forced Laverty to pay him $20,000 in fees.  Norris was a partner at LBM and threatened to have LBM foreclose on other loans unless Laverty paid the fees.

Laverty then obtained a second $500,000 line of credit from LBM for the West Roxbury projects.  At Massad's whim, LBM would periodically prevent Laverty from drawing money on the line of credit.  Laverty was thus prevented from finishing work on, and selling, some of the units.  The project was losing money quickly.  Massad and Mallegni told Laverty to let Framingham Bank foreclose on the loan, and then they (Massad and Mallegni) would buy the property at auction.  Laverty refused and filed for bankruptcy.  Massad and Mallegni threatened to ruin Laverty for defying them.

**E.      The Quincy Condominium**

In August 2004, Michael Norris told Laverty to help his daughter, Heidi Norris, find a condominium to purchase in Quincy.  Laverty found a place Heidi liked, and spoke to the seller, who wanted $175,000.  Michael said that his daughter could only afford $165,000.  Michael, under threat of having LBM foreclose on several of Laverty's loans, forced Laverty to buy the condo for $175,000, and then sell it (45 minutes later) to Heidi for $165,000.  Michael served as the closing attorney for both transactions.

F.       **Hibel Realty LLC**

Over the years, various defendants had forced Laverty to use property in Hyannis he owned with a Mr. Bradley as collateral for various loans Laverty had with LBM.  In 2006, Laverty needed another line of credit to do some work on the Hyannis property, and because it was cross-collateralized, could not obtain a loan from anyone other than LBM.  Massad and Mallegni often forced LBM to delay releasing money pursuant to Laverty's draw requests.  This delayed payment to the architect and engineering contractors Laverty hired, and thus delayed permitting for the project. With work on the project delaying and interest accruing to LBM, Laverty lost more than $6 million in expected profits.

Defendants also filled out fraudulent HUD forms associated with this loan and mailed and faxed the fraudulent forms, along with usurious demand letters on the loans, to Laverty.

II.      **Procedural History**

On February 12, 2008, LBM filed suit against Laverty in the Massachusetts Superior Court seeking to enforce various guaranties executed by him on loans to different borrowers on various promissory notes.  Laverty did not answer the complaint or otherwise appear.

However, Laverty (initially proceeding *pro se*) filed a complaint against the defendants on April 9, 2008, in this Court.  The Court dismissed the case without prejudice on May 8, 2008, for failure to pay the filing fee, even after a court-granted extension and order that Laverty either pay the fee or file financial disclosures showing why the fee should be waived.

On May 29, 2008, the Superior Court entered a default judgment against Laverty.

On June 27, 2008, Laverty (now represented by counsel) again filed a complaint against the defendants in this Court.  The case was assigned to the Eastern Division.  Laverty voluntarily

dismissed the case, by notice filed on the docket, because he wanted the case assigned to the Central Division.  On July 1, 2008, he filed the present action.

On August 1, 2008, the Superior Court entered a default judgment against Laverty. Laverty moved to vacate the default judgment; on September 12, the Superior Court denied the motion.

The 25-count complaint filed in this case alleges violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute (Count 1); conspiracy to violate RICO (Count 2); breaches of loan contracts (Counts 3, 4, 12, 13, and 14); intentional and tortious interference with contractual relations (Count 5) and intentional and tortious interference with business relations (Count 6); intentional misrepresentation (Count 7); "fraudulent accounting" (Count 8); unjust enrichment (Count 9); extortion (Counts 10 and 11); violations of Chapter 93A (Counts 15 and 24); "failure of consideration" (Counts 19, 20, 21, 22, and 23); "wrongful accrual of interest" (Count 16); "bait and switch" (Count 17); and mail and wire fraud (Count 18).  The complaint also requests "recharacterization" (voiding) of the LBM promissory note related to 655 West Second Street (Count 25).

LBM is named as a defendant in every count except Counts 10 and 11.  Marcello Mallegni is named as a defendant in twelve of the 25 counts.[2]

---

[2] The twelve counts allege substantive violations of RICO (Count 1), RICO conspiracy (Count 2), intentional and tortious interference with contractual relations (Count 5), intentional and tortious interference with business relations (Count 6), intentional misrepresentation (Count 7), "fraudulent accounting" (Count 8), unjust enrichment (Count 9), extortion (Count 10), violations of chapter 93A (Counts 15 and 24), "wrongful accrual of interest" (Count 16), "bait and switch" (Count 17), and mail and wire fraud (Count 18).

On October 7, 2008, LBM and Mallegni filed a motion to dismiss under Rule 12(b)(1).[3]

Defendants contend that (1) plaintiff, in his individual capacity, does not have standing to sue on

behalf of the borrowers as a mere guarantor on the loans at issue; and (2) the doctrine of *res*

*judicata* bars the suit.

## III.    Analysis

### A.    Standing

Defendants contend that plaintiff does not have standing to assert claims related to the

loans.  They contend that plaintiff formed various business entities that borrowed money and

owned various properties, and that because most of the alleged wrongs relate to loan contracts

and were perpetrated against the actual borrower, plaintiff was not personally injured and does

not have standing to assert those claims.

Article III of the Constitution limits the Court's jurisdiction to actual cases and

controversies, and therefore requires that the plaintiff adequately allege that (1) he suffered an

injury in fact to a cognizable interest, (2) "the asserted injury is causally connected" to the

defendants' alleged wrongful conduct, and (3) if he succeeds in the litigation, his injury will be

redressed.  *See Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006).  "In addition to these Article

III prerequisites, prudential concerns ordinarily require a plaintiff to show that his claim is

premised on his own legal rights (as opposed to those of a third party), that his claim is not merely

a generalized grievance, and that it falls within the zone of interests protected by the law

---

[3] Rule 12(b)(1) permits a defendant to file a motion to dismiss on grounds of lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  It appears that a motion pursuant to this rule is the appropriate way for a defendant to contest the plaintiff's standing to bring his claims in federal court.  *See, e.g. United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007), and *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 104 (2d Cir. 2008).

invoked." *Id.* (internal citations omitted).  Article III standing requirements are "both

plaintiff-specific and claim-specific."  *Pagan*, 448 F.3d at 26.  Therefore, in a standing inquiry, the

Court must determine whether the plaintiff "is entitled to have a federal court adjudicate each

particular claim that he asserts."  *Id.*, *citing Allen v. Wright*, 468 U.S. 737, 752 (1984); *Donahue

v. City of Boston*, 304 F.3d 110, 116 (1st Cir. 2002).

It appears that plaintiff had a controlling role (as well as a significant financial interest) in

most, if not all, of the entities that signed loan contracts with LBM.  The complaint, however, is

not always clear as to the nature of the relevant entity or of plaintiff's interest in the entity.

Of course, where a plaintiff was a personal victim of threatening or fraudulent conduct, he

has suffered an injury in a personal capacity and has standing to sue.  The complaint alleges that

over the course of a number of projects over a number of years, Mallegni made promises to

plaintiff to induce him to sign loan documents, both as "borrower" on behalf of various entities,

and as "guarantor" in his personal capacity.   To that extent, the complaint alleges facts sufficient

to establish that plaintiff has standing to assert those claims.  *See Buschmann v. Professional

Men's Asso.*, 405 F.2d 659, 663 (7th Cir. 1969); *Butler v. Winner Int'l Corp.*, 1995 U.S. App.

LEXIS 19189, *11-12 (4th Cir. July 17, 1995) (plaintiff had standing where his claim was not

based on his status as a shareholder, but rather on the fact that the defendant had made certain

promises to him in order to induce him to personally guarantee the corporation's loans).

Normally, however, a mere shareholder, officer, director, or member does not have

standing to assert a claim on behalf of a business entity.  Thus, for example, when the defendants'

alleged wrong violates a right belonging to a corporation, or causes an injury to a corporation, a

shareholder cannot, in his own name, bring an action to enforce those rights or redress those

injuries. *See Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005).  That principle

applies even when there is only one shareholder of the wronged corporation.  *See Diva's*, 411

F.3d at 42.  *See also* Massachusetts Civil Procedure Rule 23.1 ("Derivative Actions by

Shareholders").  Similarly, a member of an LLC cannot bring an action in his own name to

enforce the rights or redress the injuries of the LLC.  *See First Taunton Fin. Corp. v. Arlington

Land Acquisition-99, LLC*, 20 Mass. L. Rep. 556 (Feb. 27, 2006).

The allegations in the complaint do not make precisely clear whether plaintiff is seeking to

assert claims on behalf of other entities, or otherwise for injuries to others.  To the extent plaintiff

purports to do so, he does not have standing to assert those claims.  For example, plaintiff does

not have standing to assert claims for breach of contract when he was not a party to the contract.

Counts 3, 4, 12, 13, and 14—which appear to be based entirely on contracts to which the plaintiff

was not personally a party—will therefore be dismissed.[4]

At this point, it is difficult to state with confidence where plaintiff is asserting an injury to

himself and where he asserts an injury to one of his business entities.  However, with respect to

every loan transaction, the complaint does allege that one or more of the defendants made some

kind of misrepresentation about the terms of the loan or extorted him into giving one or more of

the defendants an unfair benefit, such as an equity interest in the project.  At the pleading stage,

those allegations are sufficient to establish standing as to the remaining claims, and therefore to

survive a motion to dismiss.  That denial is, however, without prejudice to the renewal of the

---

[4]  Count 5, which alleges intentional interference with contracts, alleges that "[t]here was an express
contract between the corporate Defendant LBM and Laverty" that was the subject of the interference.  (Complaint ¶
150).  At this stage, it is unclear what contract is intended, and therefore that claim will not be dismissed at this
stage.

motion as to additional specific aspects of plaintiff's claims once the record is more fully developed.

**B.**   *__Res Judicata__*

Defendants contend that because the Superior Court entered a final judgment against plaintiff, the doctrine of *res judicata*, or claim preclusion, prevents him from raising claims here that should have been raised as compulsory counterclaims in the state proceeding.

Rule 8(c) of the Federal Rules of Civil Procedure lists *res judicata* as an affirmative defense that must be specifically pleaded by the defendant.  Traditionally, because affirmative defenses must be proved by the defendant, it was inappropriate to raise these defenses on a motion to dismiss.  *See Drummond v. Spero*, 350 F. Supp. 844, 845 (D. Vt. 1972).  Rather, the defenses were to be stated generally in the answer to the complaint, and then determined later on summary judgment or at trial.  *See Sibert v. Phelan*, 901 F. Supp. 183, 185 (D. N.J. 1995).  However, in practice, most courts consider affirmative defenses such as *res judicata* when raised in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), but only after giving all parties notice and an opportunity to present evidence on the issue, thereby converting the motion into one for limited summary judgment.  *See* 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1277, notes 12-13, collecting cases.  Providing the plaintiff with notice and an opportunity to submit evidence contesting the defendants' *res judicata* argument is not necessary in this case because plaintiff was aware of the defendants' arguments, filed an opposition to the motion to dismiss, and did not object to the issue's determination without further discovery or evidence submission.  Furthermore, and in any event, defendants' *res judicata* arguments fail for other reasons.

State law controls the *res judicata* effect of state court judgments in federal court. *See Cohen v. Shea*, 788 F. Supp. 66 (D. Mass. 1992). Under Massachusetts law,

> The term 'res judicata' includes both claim preclusion and issue preclusion. Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action. . . . [I]ssue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.

*See Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005).

### 1.   <u>Claims Against Mallegni</u>

"Under Massachusetts principles of claim preclusion, a final judgment in one action generally precludes the plaintiff from bringing another action *against the same defendant* if the second action arises out of the same transaction or occurrence as the prior action." *See Hermes Automation Technology, Inc. v. Hyundai Electronics Industr.*, 915 F.2d 739, 750 (1st Cir. 1990) (emphasis added). Claim preclusion applies only where the parties to the claim in the second suit were all parties to, or have sufficient legal identity to one of the parties in, the first litigation. *Id.* In the Superior Court case that resulted in a default judgment, LBM was the plaintiff and Laverty was the defendant. Mallegni, however, was not a party to the suit. LBM is a limited liability company, and Mallegni does not (on this record) have sufficient legal identity with it to use the judgment in the Superior Court to shield himself from plaintiff's current claims. *See id.* (finding that a prior settlement between plaintiff and a California corporation did not bar plaintiff's suit against the corporation's parent company even though the parent company held a controlling stake in the California corporation). Dismissal of the claim against Mallegni on *res judicata* grounds is therefore inappropriate.

12

2.     <u>**Claims Against LBM**</u>

Defendants' argument as to LBM is premised in part on the compulsory counterclaim requirement of Mass. R. Civ. P. 13(a).  Under that rule,

> a pleading shall state as a counterclaim any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .

Defendants contend that because plaintiff's allegations arise out of the same acts of the plaintiff and defendants regarding the same construction and development projects and the same loan contracts, plaintiff's claims were compulsory counterclaims in the state court action, and therefore cannot be asserted here.

As noted, LBM brought an action for breach of contract in the Superior Court, and was awarded a default judgment against Laverty.  At first blush, the application of Mass. R. Civ. P. 13(a) to the default judgment would appear to preclude plaintiff's claims against LBM.  However, Rule 13(a) specifically says that a "*pleading* shall state as a counterclaim" those claims that arise out of the same "transaction or occurrence" that was the subject matter of the prior suit (emphasis added).  Plaintiff never filed a pleading in the Superior Court case.  *See* Restatement (Second) of Judgments § 22, comment e, Illustration 8; *see* 10A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2681 ("a defendant who fails to appear or to file a responsive pleading and against whom a judgment is entered under Rule 55(b) should not be prevented from asserting a claim in a later action that would have been a compulsory counterclaim in the action that terminated by default judgment"); *see also* Restatement (Second) of Judgments § 22, Reporter's Notes ("the compulsory counterclaim rule does not apply with respect to a default judgment entered before

13

the filing of a responsive pleading"), citing 10A WRIGHT & MILLER, FEDERAL PRACTICE AND

PROCEDURE § 2681.  Rule 13(a) is therefore inapplicable.

That does not, however, end the inquiry.  If the successful prosecution of plaintiff's claims

would effectively render the default judgment a nullity, principles of claim preclusion require that

the subsequent action be barred.  *See* Restatement (Second) of Judgments § 22, comment f,

Illustration 9.  Thus, for example, after entry of a default judgment against a party on a contract

for failure to pay the contract price, a subsequent action by that party to rescind the contract for

mutual mistake would be barred.  *Id.*

The application of that principle in the context of this case is difficult, at least on the

record before the Court.  The action in the Superior Court against Laverty was to enforce a

guaranty on a loan to 655 Corporation dated May 9, 2003; a guaranty on a loan to The Geneva

LLC dated December 22, 2003; a guaranty on a loan to SOS Realty LLC dated December 22,

2003; a guaranty on a loan to multiple borrowers dated March 12, 2004; a guaranty on a loan to

BLRB Holding LLC dated December 17, 2004; a guaranty on a loan to SOS Realty LLC dated

September 21, 2005; a guaranty on a loan to 655 Corporation dated January 27, 2006; and a

guaranty on a loan to Hibel Realty LLC dated February 16, 2007.  Laverty cannot now contend

that the guaranties were unenforceable, or procured by fraud—to do so would render the default

judgment meaningless.  Moreover, and at a minimum, it is doubtful whether Laverty can now

attack the validity of the loan obligations underlying the guaranties.[5]  But Laverty is not simply

attacking those guaranties; he has asserted a sprawling set of claims in this case against LBM,

---

[5] In Count 25, plaintiff asks the Court to void the promissory note for the loan issued by LBM for the development of 655 West Second Street.  The relationship of that note to the obligations addressed in the default judgment is unclear at this stage, and will have to await further development.

including claims based on RICO, Chapter 93A, and various tort theories.  It may prove to be the case that some (or even all) of those claims, or aspects of those claims, against LBM are precluded.  The Court cannot, however, make that determination on the present state of the record, in the context of a motion to dismiss.  Accordingly, it will deny LBM's motion to dismiss on *res judicata* grounds without prejudice to its renewal at a subsequent stage of this litigation, on a better-developed record.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss of defendants LBM Financial LLC and Marcello Mallegni is GRANTED in part, as follows:

Counts 3, 4, 12, 13, and 14 are dismissed as to defendant LBM Financial LLC, and is otherwise DENIED.

**So Ordered.**

                                                     /s/ F. Dennis Saylor
                                                    F. Dennis Saylor IV
Dated: June 19, 2009                    United States District Judge